IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JOSHUA MATHIES,                          )
                                         )
    Petitioner-Defendant,            )
                                         )
    v.                               )          No. 23-cr-30039
                                         )              24-cv-3180
UNITED STATES OF AMERICA,                )
                                         )
    Respondent-Plaintiff.            )

## OPINION AND ORDER

**SUE E. MYERSCOUGH, United State District Judge**

Before the Court is Petitioner-Defendant Joshua Mathies' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 35). For the following reasons, the Motion is DENIED and the action dismissed with prejudice. The Court will, however, issue a certificate of appealability.

## I.   BACKGROUND

On July 6, 2023, Defendant Mathies was charged by Indictment (d/e 1) with a single count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On October 10, 2023, Defendant pled guilty to that count and consented to the accompanying forfeiture allegation relating to a Cobray M-11 9mm Mac 10 style

handgun with serial number 94-0022678, pursuant to 18 U.S.C. 924(d) and 28 U.S.C. 2461(c). This Court accepted Defendant's guilty plea on November 6, 2023. On February 8, 2024, the Court sentenced Defendant to 48 months in prison followed by a 36-month term of supervised release.

Defendant did not file a direct appeal.

On June 11, 2024, Defendant requested reconsideration of the sentence imposed in a Motion to Reduce Sentence (d/e 32). The Court appointed Assistant Federal Public Defender Thomas Drysdale to represent Defendant pursuant to Central District of Illinois General Order 23-GO-00005, which applies to petitions to reduce sentences based on retroactive applications of United States Sentencing Commission Amendment 821. On June 28, 2024, AFPD Drysdale filed a Motion to Withdraw as Counsel (d/e 34), in which he concluded that Defendant was not eligible to seek a reduced sentence under Amendment 821. The Court granted the Motion to Withdraw (d/e 34) and denied Defendant's Motion to Reduce Sentence (d/e 32) due to his ineligibility for a reduced sentence under Amendment 821. *See* Text Order entered July 9, 2024.

Defendant filed the instant *pro se* Motion (d/e 35) pursuant to 28 U.S.C. § 2255 on July 2, 2024, alleging both that his conviction under 18 U.S.C. § 922(g)(1) was unconstitutional and that he had received ineffective assistance of counsel.[1] In response, the Government filed a Motion to Stay (d/e 38), asking the Court to stay briefing pending a decision by the Seventh Circuit in *United States v. Prince* (7th Cir. Case No. 23-3155). In a Text Order entered January 10, 2025, the Court granted the Government's Motion, and this matter was then stayed from January 10 through July 28, 2025.[2]

The Government filed its Response (d/e 48) to the § 2255 Motion (d/e 35) on September 5, 2025.

## II.    LEGAL STANDARD

"Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary circumstances." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), *citing Brecht v. Abrahamson*, 507 U.S. 619, 633-

---

[1] Defendant also filed additional *pro se* motions (d/e 39, 42) regarding his sentence, which the Court reviewed and denied during the pendency of the instant § 2255 Motion (d/e 35).

[2] To date, the Seventh Circuit has not entered a decision in *Prince* following oral arguments on December 11, 2024.

34 (1993). A petitioner may avail himself of § 2255 relief only if he can show that "the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008), *quoting* 28 U.S.C. § 2255(a).

### III.   ANALYSIS

**A.    Defendant's Conviction under 18 U.S.C. § 922(g)(1) did not Violate the Constitution**

Section 922(g)(1) prohibits the possession of a firearm by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Defendant argues that § 922(g)(1) is unconstitutional, both facially and as applied to him, following the Supreme Court decision in *New York State Rifle & Pistol Assoc. Inc. v. Bruen*, 597 U.S. 1 (2002).

The Court will begin its discussion by setting forth the relevant Second Amendment legal framework, including *Bruen*, other Supreme Court precedent, and Seventh Circuit caselaw. The Court

will then discuss the merits of Defendant's Motion. As set forth below, the Court concludes that § 922(g)(1) is constitutional both on its face and as applied to Defendant and therefore denies Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

### 1. Controlling Supreme Court Precedent

The Second Amendment provides, in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to possess a firearm in the home for self-defense. 554 U.S. 570 (2008). In *Heller*, the Supreme Court noted that there is a "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. Relying on the Constitution's structure and text, the Supreme Court explained that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 581.

In *Bruen,* the Supreme Court built upon *Heller* to clarify its position regarding who the Second Amendment protects and how to determine whether a law is consistent with those protections. Specifically, the Supreme Court held that the right to possess a firearm for self-defense also included the right to possess one outside of the home. *Bruen,* 597 U.S. at 32. Citing to *Heller,* the *Bruen* Court indicated that "[i]t is undisputed" that "ordinary, law-abiding, adult citizens[ ] are part of 'the people' whom the Second Amendment protects." *Id.* at 31-32, *citing Heller,* 554 U.S. at 580.

The Supreme Court also announced in *Bruen* a new framework for analyzing Second Amendment challenges to firearm regulations. First, the presiding court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen,* 597 U.S. at 17. If the text does not cover the conduct, the inquiry ends, and the challenged regulation is deemed constitutional.

However, if the conduct falls within the plain text of the Second Amendment, the conduct is presumptively protected. *Id.* The analysis then moves to the second step, in which the "the government must demonstrate that the regulation is consistent with

this Nation's historical tradition of firearm regulation." *Id.* In so doing, the *Bruen* Court indicated that courts "will consider whether 'historical precedent' from before, during, and even after the founding evinces a comparable tradition of regulation." *Id.* at 27; *see also id.* at 29 ("[W]hether modern and historical regulation impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations[.]" (emphasis and quotations omitted)).

Neither *Bruen* nor *Heller* called on the Supreme Court to consider the constitutionality of § 922(g)(1) or of statutes criminalizing possession of firearms by convicted felons generally. Still, each decision touched on that topic to some extent.

In *Heller*, for instance, the Court observed that the Second Amendment "elevates above all other interests the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). Moreover, the Court wrote:

> Like most rights, the right secured by the Second Amendment is not unlimited…. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of*

*firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 626-27 (emphasis added). The Court further referred to those "longstanding prohibitions" on, *inter alia,* possession of firearms by felons, as "presumptively lawful regulatory measures." *Id.* at 627 n.26.

The *Bruen* opinion was no different. The majority opinion in that case referenced "law-abiding" citizens no fewer than 14 times. *Bruen,* 597 U.S. *passim.*

In *United States v. Rahimi,* the Supreme Court heard a challenge to § 922(g)(8), which prohibits the possession of firearms by persons subject to a domestic violence restraining order. 602 U.S. 680 (2024). The *Rahimi* Court clarified that the *Bruen* standard should not be misunderstood to mean that modern firearm regulations require close founding-era comparators. 602 U.S. at 691-92. That is, in considering the constitutionality of § 922(g)(8), the Court did not need to identify a founding-era prohibition relating to domestic violence or civil restraining orders. Rather, in *Rahimi,* the Court examined both historical surety laws, which

"authorized magistrates to require individuals suspected of future misbehavior to post a bond," and "going armed laws," which involved judicial determinations of whether a particular defendant was likely to threaten another with a weapon. *Id.* at 695-97.

Therefore, the *Rahimi* Court found that § 922(g)(8) passed Second Amendment muster because, when considering the surety and going armed laws, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 699.

### 2. Seventh Circuit Precedent

After the *Bruen* decision, the Seventh Circuit provided further guidance on how to apply *Bruen*'s text-and-history analysis. *See Atkinson v. Garland*, 70 F.4th 1018, 1022 (7th Cir. 2023). In *Atkinson*, the Seventh Circuit heard argument regarding a challenge to the felon dispossession statute at issue here, § 922(g)(1). Although the Seventh Circuit declined to reach the ultimate issue of whether the statute is constitutional, the Court did provide district courts with guidance regarding the application of *Bruen*. In particular, the Seventh Circuit emphasized the government can "reason by analogy" and need not point to a "dead ringer" from

history in order to justify a modern firearm regulation. *Id.* at 1021, *citing Bruen*, 597 U.S. at 30.

After *Atkinson,* but prior to *Rahimi,* the Seventh Circuit issued a decision suggesting that convicted felons on parole may not fall under the protection of the Second Amendment. In *United States v. Gay,* the defendant challenged his conviction under § 922(g)(1) on appeal by arguing that the Second Amendment permitted persons with felony convictions like himself to possess firearms. 98 F.4th 843, 846 (7th Cir. 2024). The Seventh Circuit noted that Gay's argument was "hard to square" with *Heller's* language that "long standing prohibitions on the possession of firearms by felons" are valid. *Id.* The Seventh Circuit further noted that the Supreme Court had reiterated that all reservations and provisos in *Heller* remained valid. *Id.; see also McDonald v. City of Chicago,* 561 U.S. 742 (2010).

In *Gay,* the Seventh Circuit acknowledged that Supreme Court "Justices have yet to consider the question whether non-violent offenders may wage as-applied challenges to § 922(g)(1)" and, therefore, concluded that "[w]e may assume for the sake of argument that there is *some* room for as-applied challenges[.]" 98 F.4th at 846. However, the Seventh Circuit rejected such a

Page **10** of **20**

challenge from Gay because he had been convicted of 22 felonies, including aggravated battery of a peace officer and possessing a weapon while in prison. *Id.* at 846-47. The Court concluded that Gay could not fit the description of "law-abiding, responsible citizen" that the *Bruen* Court repeatedly opined would possess rights under the Second Amendment. *Id., citing Bruen*, 597 U.S. at 26.

Most recently, in *United States v. Reyna*, the Seventh Circuit considered the constitutionality of § 922(k), which prohibits possession of a firearm with a serial number that has been removed, obliterated, or altered. -- F.4th --, 2026 WL 221850, at *2 (7th Cir. Jan. 28, 2026). In *Reyna*, the Seventh Circuit acknowledged that "[t]he *Bruen* standard is still in its early days"; therefore, "[i]t's no surprise that difficult theoretical questions remain"—particularly "absent further signals from the Court about the *Bruen* step-one inquiry" regarding whether various conduct regulated under the provisions of § 922 is "categorically outside the prima facie scope of the right" to bear arms under the Second Amendment. *Reyna*, 2026 WL 221850, at *5.

### 3. Defendant's Facial and As-Applied Challenges Fail

Page **11** of **20**

As indicated above, Defendant attacks 18 U.S.C. § 922(g)(1) both on its face and as applied to him.

In line with *Reyna* and *Heller*, the Court will assume that Defendant's conduct in possessing a firearm falls within the plain text of the Second Amendment's protected conduct. *Reyna*, 2026 WL 221850, at *5, *citing Heller*, 554 U.S. at 582; *see also Rahimi*, 602 U.S. at 691; *Bruen*, 597 U.S. at 28. Based upon current precedent, the Court will assume, without deciding, that Defendant is part of "the people" even though he is a felon. The Seventh Circuit has explicitly and frequently rejected the notion that *Heller* and its progeny directly stand for the proposition that Second Amendment rights extend only to "law-abiding citizens" when the text of the Amendment itself refers to "the people." *See, e.g., United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) ("While some of *Heller*'s language does link Second Amendment rights with the notions of 'law-abiding citizens' and 'members of the political community,' those passages did not reflect an attempt to define the term 'people.' We are reluctant to place more weight on these passing references than the Court itself did."); *see also Atkinson*, 70 F.4th at 1022 (declining to issue ruling "based on the oft-quoted

Page **12** of **20**

dicta [in *Heller*] describing felon-in-possession laws as

'presumptively valid'"); *Kanter v. Barr*, 919 F.3d 437, 445 (7th Cir.

2019); *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010).

Put differently, this Court cannot conclude that Defendant's

conduct in possessing a firearm is "categorically unprotected" by

the Second Amendment. *Bruen*, 597 U.S. at 17, *citing Kanter v.*

*Barr,* 919 F.3d 437, 441 (7th Cir. 2019). As this case can be

resolved on the second prong of *Bruen*, the Court will leave the

question of whether a felon such as Defendant always falls within

the Second Amendment's understanding of "the people" to the

Seventh Circuit to resolve.[3] This is consistent with the approach of

other district courts within the Seventh Circuit. *See, e.g., United*

---

[3] Even though the Supreme Court has repeated its dicta
regarding "law-abiding citizens," it is unclear which step of the
*Bruen* two-step analysis produces that result. *See Kanter*, 919 F.3d
at 451-52 ("There are competing ways of approaching the
constitutionality of gun dispossession laws. Some maintain that
there are certain groups of people—for example, violent felons—who
fall entirely outside the Second Amendment's scope. Others
maintain that all people have the right to keep and bear arms but
that history and tradition support Congress's power to strip certain
groups of that right. These approaches will typically yield the same
result; one uses history and tradition to identify the scope of the
right, and the other uses that same body of evidence to identify the
scope of the legislature's power to take it away." (Barret, J.,
dissenting) (internal citations omitted)).

*States v. Wigfall*, 677 F.Supp.3d 791, 796 (N.D. Ind. 2023) ("The

court will assume the Second Amendment applies and proceed

directly to the historical analysis—a not uncommon practice."),

*citing White v. Illinois State Police*, 15 F.4th 801, 811 (7th Cir. 2021);

*United States v. Posey*, 655 F.Supp.3d 762, 771 (N.D. Ind. 2023);

*United States v. Rice*, 662 F.Supp.3d 935, 945 (N.D. Ind. 2023).

Therefore, the Court now advances to *Bruen*'s second step to

determine whether § 922(g)(1) is constitutional because it is

"consistent with the Nation's historical tradition of firearm

regulation." *Bruen*, 597 U.S. at 24.

As previously summarized, the Supreme Court held in *Rahimi*

that "[o]ur tradition of firearm regulation allows the Government to

disarm individuals who present a credible threat to the physical

safety of others." *Rahimi*, 602 U.S. at 699. And, although *Rahimi*

addressed the constitutionality of § 922(g)(8) (a firearm prohibition

arising out of a domestic violence restraining order rather than a

felony conviction), almost every district court in the Seventh Circuit

that has reached this question—indeed, nearly every court in the

country—is in agreement that § 922(g)(1)'s prohibition on the

possession of a firearm by convicted felons is very much consistent

with the country's historical tradition of firearms regulation, and therefore passes constitutional muster. *E.g., United States v. Watson,* 2023 WL 6623774, at *6 (E.D. Wis. Oct. 11, 2023) (noting that § 922(g)(1) had been upheld "in approximately 200 separate rulings" in the approximately 15 months since *Bruen*).

Among the relevant history and tradition that has already been set out at great length by other courts, it has been observed that "during the 18th century leading to the ratification of the Bill of Rights[,] felons were largely subject to capital punishment." *United States v. Ware,* 673 F.Supp.3d 947, 959 (S.D. Ill. 2023), *citing* 4 William Blackstone, *Commentaries on the Laws of England* *98 (Harper ed. 1854), *Baze v. Rees,* 553 U.S. 35, 95 (2008) (Thomas, J., concurring). Given the historical tradition of capital punishment for felonies, another district court in this Circuit has aptly observed:

> As a matter of logic and experience, it makes sense that these extensive and exhaustive penalties for felonies—outright capital punishment and the forfeiture of all property—qualify as powerful evidence that mere firearms dispossession of felons is a "comparable burden," as *Bruen* frames the standard, 142 S. Ct. at 2133, to historical punishments for felonies. *See Medina,* 913 F.3d at 158 ("[I]t is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms.").

*United States v. Agee*, 2023 WL 6443924, at \*10 (N.D. Ill. Oct. 3, 2023), *citing Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019).

This Court agrees with *Agee* that firearms dispossession under § 922(g)(1) qualifies as a "comparable" (or lesser) burden in relation to the punishments imposed on felons as a matter of historical tradition. Therefore, the Court finds, as have a majority of the courts in the Seventh Circuit and across the country, that § 922(g)(1) survives constitutional scrutiny on its face because, under step two of *Bruen*, it is "consistent with the Nation's historical tradition of firearm regulation[.]" 597 U.S. at 17.

Further, to the extent that Defendant brings an as-applied challenge, as the *Rahimi* Court made clear, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." 602 U.S. at 699. Defendant's lengthy criminal history—which consists of at least one conviction of aggravated battery (discharge firearm), as well as aggravated unlawful use of a weapon, possession of narcotics, and robbery—places him within the group of people who pose a credible threat to the safety of others. *See also. Gay*, 98 F.4th at 846-47 (7th Cir. 2024) (rejecting the defendant's specific

Page **16** of **20**

as-applied challenge because his prior felonies included aggravated battery of a peace officer and possession of a weapon while in prison).

Defendant specifically argues that § 922(g)(1) is unconstitutional because it does not distinguish between dangerous and non-dangerous felons. In *Atkinson,* the Seventh Circuit remanded a case challenging the constitutionality of § 922(g)(1) to the district court in 2023, with directions to engage in an historical analysis that could include whether there is any historical support for a distinction between violent and non-violent felonies. 70 F.4th at 1024.

Defendant has not pointed to any historical evidence for such distinctions, nor for individualized assessments or carveouts for individuals with his particular felony convictions. *United States v. Head,* 734 F.Supp.3d 806, 825 (N.D. Ill. 2024), *citing Atkinson,* 70 F.4th at 1024. Rather, as discussed above, the historical record supports the longstanding disarmament of groups based upon their status as convicted felons generally, without assessing whether the underlying felonies or conduct suggested a particular degree of dangerousness by the individual defendant. *See Agee,* 2023 WL

Page **17** of **20**

6443924, at *11-12.

For these reasons, Defendant is not entitled to relief under 28 U.S.C. § 2255 based upon the constitutionality of § 922(g)(1).

## B. Defendant's Right to Effective Assistance of Counsel was not Violated.

Defendant raised a second ground for relief in his § 2255 Motion, alleging ineffective assistance of counsel. Criminal defendants are guaranteed the right to effective assistance of counsel under the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland*'s two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015).

However, in his § 2255 Motion Defendant alleges in full: "counsel failed to legally advise" and "at the time of hearings defendant's counsel made him believe his position." Without additional allegations, Defendant has failed to make the required showing of both deficiency and prejudice under *Strickland*. And to the extent that Defendant intends to allege that his attorney misinformed him as it relates to the constitutionality of § 922(g)(1),

this cannot serve as a basis for a claim of ineffective assistance where this Court has joined a majority of others in determining that § 922(g)(1) is, in fact, constitutional. At a minimum, the constitutional status of § 922(g)(1) is unsettled.

Therefore, Defendant is not entitled to relief under 28 U.S.C. § 2255 based upon ineffective assistance of counsel.

## IV. CERTIFICATE OF APPEALIBILITY

If Defendant seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, in light of the pending Seventh Circuit opinion in *United States v. Prince* regarding the constitutionality of charges and sentences under § 922(g)(1), the Court finds that reasonable jurists

Page **19** of **20**

could debate whether § 922(g)(1) is unconstitutional. Accordingly, the Court ISSUES a certificate of appealability.

Defendant is advised that Federal Rule of Appellate Procedure 4(a) governs the time to appeal, and that a timely notice of appeal must be filed even when the District Court issues a Certificate of Appealability.

## V.    CONCLUSION

For the reasons stated above, the Court DENIES Petitioner-Defendant Joshua Mathies' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 35).

The Court ISSUES a Certificate of Appealability.

The Clerk is DIRECTED to prepare the Judgment dismissing this case with prejudice and to close the accompanying administrative case 24-cv-3180.


**IT IS SO ORDERED.**
**ENTERED:  February 11, 2026.**
**FOR THE COURT:**


/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**